Next case this morning is United States v. Patton, number 18-3169. Counsel, you may proceed. May it please the court. David McArell on behalf of Jermaine Patton. Mr. Patton's base offense level was increased by 12 levels resulting in a sentence of approximately seven additional years based solely on the But the relevant conduct provision contained in 1B1.3A1B requires additional steps in order for a defendant to be held accountable for the conduct of others. Our appeal focuses on the first two. One, there must be a jointly undertaken criminal activity and the acts must be within the scope of that criminal activity. Well, obviously we recognize the guideline includes a reasonable foreseeability requirement. We don't argue that here. The commentary also provides additional important guidance in how to interpret that relevant conduct provision. Specifically, note three states, quote, acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct under subsection A1B. For that reason, the district court erred when it found the acts of another, Mr. Harris, attributable to Mr. Patton through relevant conduct. I'll start with the relevant conduct issue and as I hope we've made clear, we believe this issue resolves both enhancements. There are two sixth level enhancements at play here. Both the victim enhancement contained within the robbery guideline and the official victim enhancement that's at play in 3A1.2. Both are obviously implicated by the relevant conduct guideline. We believe the court can resolve both through that mechanism. The key facts here are not at issue. The district court found, the government agrees, Mr. Patton was incarcerated. He was in custody of the Topeka Police Department for an hour before Mr. Harris shot Detective Hill. Counsel, is that, now with regard to the historical facts, there doesn't seem to be much disagreement. What about the factual, what might be considered a factual finding with regard to the scope of the criminal activity jointly undertaken? Is the scope of that jointly undertaken criminal activity a factual finding and if so, do we apply clear error? To the second part of your question, I think that's correct as far as factual findings. Our position is is there isn't really much disagreement about the scope. The problem is, is the government argued the scope expanded by the flight and then the district court found that therefore Mr. Patton was liable for basically everything that happened while Mr. Patton was driving Mr. Harris away in the car, we wouldn't be here. It would be appropriately applied. The problem is, first is the arrest, United States versus Melton, a case from this court from 1997, says that absent other information of a continuing conspiracy or assistance of the other, arrest ends liability for relevant conduct purposes. I thought Melton only involved whether or not there was withdrawal from the jointly undertaken criminal activity. Am I mistaken? Might be. I do believe the case has withdrawal language and I can point to some of the language. Well, let me read you some language. It says a conspirator's arrest by itself is insufficient to constitute his withdrawal. So is it correct to say that Mr. Patton's arrest alone is insufficient to constitute withdrawal under Melton? Your Honor, and I don't know if this is on the same page, but in Melton at 1405, the court... I'm on 1405. Okay, and this should be a quote, although arrest does not automatically bar attribution to defendant of co-conspirator's acts after that date, since the relevant conduct provision limits accomplice attribution to conduct committed in furtherance of the activity the defendant agreed to undertake, a defendant cannot be held responsible for conduct committed after he or she could no longer assist or monitor his or her co-conspirators. So our position isn't an automatic bar, you're arrested, you can't possibly be liable for anything that we attempted to make that clear in the reply brief, we didn't, I apologize. Our position is arrest plus no additional evidence of some continuing role. So I think Melton kind of has a string side of cases where it says, you know, here's situations where accomplice liability would continue. Jail communications, evidence of sort of some continuing role that they're playing, and so maybe this isn't a clean way to explain it, but it seems like there's a presumption that if you're under arrest, relevant conduct liability ends. But that presumption can be overcome quite easily, and maybe presumption is the wrong word, but by additional evidence of a continuing role in the conspiracy or in whatever the jointly undertaken criminal activity is. Doesn't there need to be some evidence of actual withdrawal? For example, in some of the conspiracy cases it would take the form of the defendant affirmatively withdrawing from the conspiracy or cooperating with the government, and we don't have any evidence of that here. Is that correct? Correct. No additional evidence of affirmative staff. And then if arrest alone isn't enough, as you've indicated, it's got to be arrest and, or arrest plus, if the, who has the burden on that issue? Do you have the burden? Does the defense have the burden to show withdrawal, or does the government have the burden to show continuing participation? Once you have this arrest, I mean, does Melton help us on that issue? I want to, I want to one thing to make sure we're not off track, and I do intend to answer your question. The conspiracy cases that the court discusses, I don't disagree, but conspiracy liability is broader than liability under the relevant conduct provision, and it turns on that jointly undertaken criminal activity, the agreement portion. So while that's, well that's a, that's an interesting point. Let me just, on that particular point, is the standard for withdrawal from a conspiracy different from the standard of withdrawal from jointly undertaken criminal activity? Yes. And why, what, have you got any authority for that? I mean, I think Melton's helpful on this. I, you were pretty definitive with the yes, so it seems like there, there ought to be something to support it. So I, I was I attempted to find cases that sort of tried to synthesize those two rules. I mean, we have those cases that are discussing statute of limitations as far as conspiracy liability in kind of an arrest context, and here's the co-conspirator hearsay exception in those cases. I couldn't find any cases that explicitly tried to sort of combine those concepts. We argue the Melton concept seems sort of naturally related to them, but to be frank, as far as authority, I couldn't find a case that tried to synthesize those. Our position, and I think this is consistent with Melton, is, is arrest is sort of, like I said, almost a presumptive removal for relevant conduct purposes, not conspiracy, absent any other evidence. And factually, in this case, I think, if the test is the second test that you propose, Judge Mathison, that the defendant has some sort of burden, we asked the testifying officer at sentencing. We said, you know, are you aware of, you know, various parts of the investigation? Did Mr. Harris make statements about Mr. Patton to implicate him? We also have maybe a more thorough record than we might have otherwise, because Mr. Harris was prosecuted in state court, and we have the entire transcript of his trial, and there's nothing in either of those documents that shows an extended agreement that they had said, hey, if we get split up, you do this, I'll do this. But let me ask you, particularly if we're looking at it potentially, either as a mixed question of law and fact, or as a factual issue, we have a situation where the parties agree, I think, historically, that Mr. Patton is driving Mr. Harris after three prior armed robberies. Certainly there's evidence, I think, unless you tell me otherwise, that one can reasonably infer that Mr. Harris, I mean, Mr. Patton, as the driver, knew that the person that was going to conduct the robbery, Mr. Harris, was already armed. He's driving him, and they're trying to evade capture. Mr. Patton has two choices. Pull over, let the officers come and conduct the arrest, or get out of the car, assume that you're going to flee, and Harris is going to flee. And so I think what the district court is making a factual finding is, well, the originally jointly undertaken criminal activity was to conduct the robbery, and then it expanded for the flight. He enabled Mr. Harris, with his and he's on the loose with the gun. And so then Mr. Patton is captured, but Mr. Harris isn't. And so why isn't it a reasonable factual finding that there was jointly undertaken criminal activity to enable Mr. Harris to flee with a gun? If I understand the court's question, I think the government, at least sort of briefly, references this type of argument, almost a but-for type situation. If Mr. Patton hadn't taken certain steps, Mr. Harris couldn't have done these things. And I think it's resolved on the first step. The acts have to be in agreement, it has to be jointly undertaken criminal activity. United States v. Willis, which is another case from this court, isn't directly a bout but-for, but I think it it makes this, it answers your question. This is the case where Mr. Willis gives accurate login information to his drug dealer as like an exchange. He thinks it's, he's told, or at least there's evidence that it's to collect debts, but maybe not surprising to anybody, the drug dealer uses it to steal people's identities and to do other identity type offenses. The court, this court remands that case, stating at 1129, a district court must first determine the scope of the specific conduct and objectives embraced by the defendant's agreement, and then at 130, or 1130, a defendant's accountability only extends to the criminal conduct he agreed to undertake. So again here, the drug dealer couldn't have gotten all the people's Social Security and all their information, but for Willis giving that information. But Willis's agreement wasn't, I would give this to you for the purpose of committing identity theft or what other other offenses. And so I don't think it's a but-for test. Well, but assuming it's not a but-for test, can one reasonably infer that there was an implicit and implied agreement when he had control of the vehicle, stopped it, and allowed Mr. Harris to flee, that that was an implicit agreement in order to enable him to do it, an intent to enable Harris to flee with a gun? So again, I think, I think the enabling is sort of a but-for, maybe we disagree on that. I would agree with the court that during the course of flight, we wouldn't be here, we wouldn't be making that argument, that's the scope. Maybe as they're both getting out of the car, if this happens simultaneously, this is sort of the, a couple of cases that the government pointed to. Gomez is one where it's almost simultaneous, it's a Ninth Circuit case, and Knoll, which is a unpublished Sixth Circuit case, is sort of a concurrent, it's happening as the two are fleeing, but that's not the facts before us. There's, there's clearly a break in time, and our position is time isn't really the issue, but there's certainly a break. And again, there's no evidence of any agreement as to what would happen after they split. So this, at risk of oversimplifying, what difference does it make whether they're fleeing in a car or fleeing on foot? They were still fleeing when they got out of the car, and when they decided to rob the convenience store, I assume, I think reasonably, that they weren't going to just hang out at the convenience store, they were going to get away however they could. And so I'm, I guess what I'm not following here is why, when Harris was fleeing, that was still part of the jointly undertaken activity. Harris's flight after Mr. Patton is under arrest is not joint in, in any way. Why not? Did he know that Mr. Patton had been arrested? I mean, weren't they really, at that point, just splitting up and trying to get away with this? Yes. As far as Harris is concerned, that's part of getting away. Yes, Your Honor, I think the argument that we make as far as Krugelwitz and Grunewald sort of answer this, that there's, there's the offense, obviously this didn't happen in the offense, there's immediate flight, we could differ about whether this is immediate or not, but then at some point there's just trying to, to hide yourself, to secret yourself, and the court in Krugelwitz and Grunewald rejects that to say a conspiracy doesn't sort of continue indefinitely while you're trying to, to hide yourself. Well, an hour, an hour after the robbery, that doesn't seem indefinite. Now, if it's a month later, that's another matter. But, Your Honor, it takes, it takes a while to get away. I, I understand. I, I don't think it's a, it's a timing issue. I think it's a, was there agreement issue? And, and so I didn't. Well, isn't, isn't the issue, doesn't the issue really come back to the arrest and the aftermath of the arrest? Isn't that really what? We think arrest ultimately resolves the case. Yes, Your Honor. Not alone, as you said at the hearing, the two had said, hey, if we split up, make sure to take out any officers, or if, for example, if Mr. Patton lied to police and said, oh, Mr. Harris dumped his gun, don't worry about him, or something like that, maybe that would meet the additional evidence test. We don't have any of that here. And what did, what did the district court do with the arrest at the hearing? What, what was the district court's analysis? It didn't appear that the district court considered the arrest. Was it argued? Yes. In this context. Yes, we, we cite Melton in the district court, so. Well, and so why isn't that an important part of your argument? As far as just the lack of sufficient factual findings. Well, if the court didn't consider the arrest and you think the arrest was, is a linchpin here, isn't, isn't that really your, is that the, is that the error? You know, at the beginning of the brief, we certainly cite that the first step under the guidelines, under the commentaries, the court has to make sufficient factual findings if this court is of the opinion that wasn't made here. Well, I'm not talking about a factual finding. I'm just talking about addressing your issue. If it was raised, that's what Judge Seymour was asking. Yes, and I agree. I don't think the district court sufficiently dealt with the arrest argument. I do believe we made it. We cite Melton, and I think that's the strength of the argument in district court and the strength of the argument here. I see I'm, I'm past my time. I'm glad to answer any questions the court has. I lost track of myself. We, we, we let you go over a bit. Thank you. Thank you, counsel. Good morning, your honors. I may have pleased the court. Jared Magg, assistant to the United States Attorney for the District of Kansas. Candidly, we're working with a set of facts that doesn't lend itself to a lot of case support. There is not a lot of precedent in this area, and so arguably the court is, particularly in the Tenth Circuit, is left with an issue. I think that it's going to have to sort of synthesize the issues. But what I would say is I don't think that the conspiracy law necessarily lends a lot of support here. I, I really think this is a guidelines issue and how you apply 1B1.3 rather than the conspiracy. As this court has, has said repeatedly, conspiracy analysis is much broader, but this is very fact-driven. And the court, I think Judge Bacharach especially, has centered the issue on what role does the arrest play in this circumstance? Does it, does it sort of, is it sort of a demarcation here that anything after it really does not lend itself to a responsibility on the part of Mr. Patton just because Mr. Harris Let me just ask you to clarify your, your statement about the conspiracy case, because Melton was a conspiracy case, right? Does that mean that Melton is not a guidepost in helping us resolve this case? That's our position, that Melton really, while it does talk about the fact that when someone withdraws from a conspiracy or the acts afterwards are not attributable to someone who is, in this case, was involuntarily, you know, arrested, Melton really doesn't lend much guidance under the circumstances, either factually or legally. Well, there was an arrest there. I mean, there, there was a, that was a, that was a milestone moment in, in that case, and we have an arrest here. And in that case, the court said that the government in, in, in Melton had conceded that the participation in the conspiracy had terminated with the arrest. I take it you're not conceding that the arrest terminated the joint activity here. Not at all, because Okay, then, then why didn't it? Because it doesn't lend enough credit to the fact that Patton set this in motion by agreeing to flee and avoid detection. He, again, as we've used the term prior, he's enabled Harris to continue to flee, which is with, well within the scope of the agreement of the parties, which is to avoid detection and flee from the robbery. There isn't any doubt. There doesn't need to be a But how did he continue to participate once he was arrested? How, how was he participating in the joint activity at that point? Mr. Patton? It simply gets to the issue, Judge Mathison. Pardon? That he allowed and enabled Harris to continue to flee, which is within the scope. But that was before he was arrested. What about the arrest itself? The arrest does not matter under those circumstances. The fact they agreed to flee and that that is within the scope, the fact that Harris continues to flee, all of that remains attributable to Patton because Patton was the driver which enabled Harris to flee. So, so you're saying the arrest is irrelevant. It is irrelevant. We do not believe it has really any impact on the, on the facts of the scope of the agreement on flight to avoid prosecution. Because when, when Patton agrees to drive away from the scene, that gives Harris the opportunity to continue to avoid detection by flight. So if he's undetected for a month and meanwhile, Mr. Patton is sitting in jail, everything that happens with Mr. Harris is attributed to Mr. Patton. No, it's not. And again, candidly, Why not? He's still fleeing. I think that, I think it's the Taylor case out of the Seventh Circuit sort of lends to the idea that the time away from, and maybe this goes to the second issue more than the first as far as immediate flight. And I don't want to conflate the two enhancements here. I think we would lose on the immediate flight issue on the, on the second enhancement under 3A1.2. I don't disagree that it might be attributable to him in the instance of a factual situation as you would raise, if he were to confront law enforcement officers and law enforcement officers knew that he had engaged in or had engaged in this robbery and were trying to arrest him for that. And he fights back or shoots or something to that degree. There could be an argument there. I think it's a much harder argument because again, this situation was very fluid because remember, there are officers who are remaining on the scene. They are looking for him. So this is all confined into this area of trying to get both of them arrested. And so to sort of divorce the idea of Patton's involvement simply because of the arrest, again, gives no credit to what he did to allow Harris to continue to flee. Well, is there anything that Patton could have done to get himself off the hook of having Mr. Harris's conduct attributed to him? In our opinion, no. Other than the fact that... Well, what if, what if he'd been arrested and he'd said to the arresting officer, I know where Mr. Harris is going to go and I'm going to tell you so you can catch him? I don't think that absolves him of liability. If Harris, because remember, he gave Harris the opportunity to flee. So he's still participating in joint activity even though he's cooperating with the government at that point? It's not participating in joint activity beyond the arrest. It's the issue of, and I think that's where the disconnect is between the parties here, is that somehow the act of assisting Harris post-arrest has to be an action post-arrest. Our position is the decision to enable Harris through the driving is enough that the arrest becomes irrelevant. Well, I understand the argument, but have you got any cases that would give us, that give you any support? And that's the unfortunate reality of the factual scenario under this circumstance. You don't see this very often. In many instances, when you have a confrontation, and I think Mr. Magriel would agree, if the confrontation and the shooting had occurred immediately when they were stopped, this isn't an issue. Those enhancements are going to apply. It's the fact that there was an hour difference between the arrest and when Mr. Harris engaged Detective Hill. And the question only is, is how much liability is attributable to Mr. Patton for that? Let me ask you this. What if the government had decided to charge this as a conspiracy? Oh, we certainly could have. To the robbery. Yeah. Okay. So let's say they charged it as a conspiracy, and then we go to the scenario I gave you where Mr. Patton's arrested, and he starts cooperating with the government, which under the conspiracy cases has been deemed to be a withdrawal. Sure. But here, it wasn't charged. Is it just a happenstance that it wasn't charged as a conspiracy, that we're outside of looking at any of that law to help us decide this? Well, there were a lot of factors under the circumstances here because, of course, Mr. Harris was charged with capital, attempted capital murder in the state of a shooting law firm. I understand. But if the case, I mean, for all intents and purposes, weren't they engaged in a conspiracy to rob the convenience store and to get away with it? They were engaged in a conspiracy as much as they were engaged in the fact that Patton was a principal under aiding and abetting theory. And that's what he was charged with. Is this the point, maybe, that is triggering this issue, that for 1B1.3, for determining relevant conduct, the scope of the jointly undertaking criminal activity, I think I hear you saying or implying that there is really no such thing as withdrawal from the scope of whatever the scope of the jointly undertaking criminal activity is. And that's why I think you're drawing the conclusion that his arrest really can't make any difference as opposed to conspiracy. So, in other words, what you're saying is once he agreed, in your view, to jointly undertake criminal activity to flee, it doesn't matter if he's cooperating. It doesn't matter what, because the scope is whatever it is. It only ends when Harris is captured. Because once he enables the flight. Is that a factual finding, the scope of the jointly undertaking? Yeah, and Judge Becker, I know you asked that question. And I think that's, I don't know that there's necessarily a disagreement about the fact that Patton was the driver. So the fact that he drove is not in dispute. But what they agreed to jointly, you know, yeah, the scope of, you know, the driving, everybody agrees with that. I suppose where the rubber meets the road is whether there was jointly undertaking criminal activity to flee. Here's how I would answer that, is that the actions of both Mr. Harris and Mr. Patton demonstrate the agreement. Clearly, they knew that they were being followed. Clearly, they knew that the situation that they were in required them to flee on foot now. And that agreement was demonstrated by both of them going in opposite directions. There are certainly, I think it's fair to say, there's nothing in the record to suggest that the two of them decided in the car that if you go one way, I will go the other. Their actions demonstrate that. You used the term earlier with Mr. Magriel that that was, it was sort of an implied agreement. You know, six in one, half dozen the other. Their actions demonstrate an agreement to avoid detection and to flee from enforcement officers. This is not an uncommon. You see this all the time in situations where officers immediately are on the scene and they, you know, the Confederates flee from the scene and they're chased. That agreement, once it started, again, I think to not hammer the point home more than I need to, was that once that agreement started, the arrest really largely became an irrelevant standard or an irrelevant issue until Harris is captured because Patton at every turn enables Harris to continue to flee. And that's what we're resting our position on. And I don't want the court to lose sight of that fact. That's why I don't think conspiracy law really plays here because the agreement itself doesn't really lend to a conspiracy type agreement. It wasn't an agreement. I mean, obviously they agreed to flee. Patton's driving. Harris wants to flee and they want to get out of there. That agreement exists. That's implied. It's demonstrated. Would you agree that it's at least possible for a party to an agreement like this one to withdraw from the agreement? Oh, certainly. It's certainly possible. You certainly could have a situation where someone stops the car immediately, as you referenced earlier, that they could stop and get out of the car and say, I don't want any part of this any longer. He did this. I agree. I'm the driver. I don't want any more of this. Certainly that's evidence of some level of But if he doesn't, there's no time limit. We don't believe, Will, we believe that the time mark ends when the other confederate is captured. For hold and conduct, not for 3A1.2. Not for 3A1.2. And that's where I want to get to the issue of the immediacy of it. That, I think, is a different animal. And I think that's a tougher question for the court because there's so little case law on that. If the court would allow me to move to that, I think that's really the The action itself of shooting Detective Hill had to be immediately within the larger Hobbs Act robbery that occurred in this case, I think, does a disservice to the whole idea of how this rule is to be applied. So, for example, say, for instance, that they had gotten into a, Patton is arrested, but Harris is on the run, but they know where he is, and they get into, say, a long, slow chase that takes maybe two hours. But at the end of that, Harris shoots the pursuing officer. That's clearly not immediately within the context of the robbery, but it's certainly within the scope of the robbery because they are chasing him. That's our position. The term immediate, to apply it in a circumstance to say that it must be instant to the actual robbery itself, does a disservice to the facts that generally apply under these circumstances because these events, as demonstrated in this case, it takes times for officers to find the individuals. And in this case, it was simply one hour. It's hard to define. What do you, don't we have to do a definition of immediate if it's not defined? In the Doherty case, the court says to sort of fall back to the traditional methods of looking at the definitional sections. And again, we think that does a disservice to factual scenarios if you confine yourself to the idea that it is instant because the situations like this are so fluid when officers are coming onto the scene. And the reason that I used it in the converse in my brief is to suggest only this. In those cases, those were situations where there were individuals who, there were days beyond where the actual incident occurred where 3A1.2 was sought to be applied. And clearly in those instances, days beyond, that's not immediate. But the fact remains is that they took time to consider whether or not that was immediate. So our position was, in the event where a court is going to at least contemplate the idea of more than 24 hours being immediate, it certainly is within the realm of possibility that a mere one hour from the robbery falls within the term immediate as what we believe the guidelines and the Sentencing Commission would understand that term to mean, particularly in the context of robbery situations when generally you have situations where the individuals do flee from the scene. So what's the standard that we apply? Well, this court has said regularly to look to other parts of the guidelines to try to reach a decision. And I think to give a full appreciation of the term immediate, I think you have to immediate and engage that in the term of instant. It circumscribes scope to an area which I don't think the Commission really would want the court to do that. The court understands a broad interpretation of the guidelines is the appropriate manner in which to do it. And I see, I'm sorry, I see my time is quite over. We seem to be in a pattern today of doing that. So I do apologize. Unless the court has any questions, we would ask that the court uphold the lower court's decision to apply these enhancements. Thank you. Thank you very much. Thanks to both of you for your arguments this morning. Did he have any extra time? Oh, sorry about that. We'll consider the case submitted and counsel are excused.